SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
TODD WIDER

                Plaintiff,

    -against-

270 WEST END TENANTS CORP.,

                Defendant.
-------------------------------------------------------------------x
270 WEST END TENANTS CORP.

                Third-Party Plaintiff,

    -against-

McFAR CONTRACTORS, INC. and
OUTDOOR INSTALLATIONS, LLC and
ENDURANCE INSURANCE COMPANY,

                Third-Party Defendants.
-------------------------------------------------------------------x
McFAR CONTRACTORS, INC.,

                Second Third-Party Plaintiff,

    -against-

FUSION RESTORATION, INC. and
ENDURANCE AMERICAN INSURANCE COMPANY,

                Second Third-Party Defendants.
-------------------------------------------------------------------x

Index No. 102455/10

AFFIRMATION IN
OPPOSITION

Third-Party
Index No. 590306/10

Second Third-Party
Index No. 590709/11

JAMES FEEHAN, an attorney, duly admitted to practice law before the Courts of the State of New York hereby affirms the following to be true under the penalties of perjury.

1.    I am associated with the firm of EPSTEIN GIALLEONARDO HARMS, and McDonald, the attorneys for the third-party defendant FUSION RESTORATIONS INC. (hereinafter "FUSION") and as such am fully familiar with the facts and circumstances set forth herein.

2. I make this affirmation upon information and belief. The basis of such belief and the grounds of such information being a review of the files maintained by the aforementioned attorneys in the course of the defense hereof.

3. This affirmation in opposition to the motion of McFAR CONTRACTORS INC. (hereinafter "McFar") seeking an Order granting conditional summary judgment in favor of the third-party plaintiff, MCFAR against third-party defendant FUSION based upon contractual indemnification.

4. Your affirmant has read the Affirmation of counsel for McFAR, C. William Yanuck, dated October 26, 2012 and must respectfully disagree with same.

5. Initially, your affirmant will concede that there is, indeed, indemnification language running in favor of the moving third-party plaintiff McFAR contained within the contract between McFAR and FUSION. The contract language at Article 11.20 however, calls for the third-party defendant FUSION to indemnify McFar, only where the damage is "caused in whole or in part by any negligent act of or omission of the Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in whole or in part by a party indemnified hereunder." (A copy of the contract is annexed to the moving papers as Exhibit "D").

6. Not even counsel for McFAR has suggested in his Affirmation that such clause would require FUSION to indemnify McFAR for its' own negligence. Therefore in order for the clause to be triggered FUSION would have to be found to have committed some negligent act. FUSION has not been found to be negligent as of this date for the alleged damages and, as such, the instant application is premature and should be denied as same.

7. The moving party has produced no evidence of negligence on the part of FUSION in support of its' motion. Your affirmant would argue that there are a myriad of fact questions as to both the existence of damages alleged by plaintiff and the source of nay such damage that preclude granting the instant motion at this time.

8. Counsel for McFAR relies on the Affidavit of David Farbstein in support of the instant motion. Mr. Farbstein is the president of McFAR. Paragraph 6 of Mr. Farbstein's Affidavit suggests that plaintiff's lawsuit is for property damage to his building that allegedly occurred in connection with the Local Law 11 work being performed by McFAR's subcontractor, FUSION at

270 Park Avenue. The Affidavit further avers that McFAR had no supervisory authority or control over the employees of FUSION. It further alleges that all of the work being performed was done by the subcontractor's crew using the subcontractor's equipment. Your affirmant disagrees.

9. Initially it must be pointed out that FUSION was given access to a stairwell and sidewalk bridge to gain access to a work platform that FUSION did not erect or contract for. Further, protective scaffolding was put up which was intended to protect the property of the plaintiff from the work being performed at 270 Park Avenue by other than FUSION employees. To the extent that those items are alleged to be insufficient or that they actually cause damage to plaintiff's building FUSION can not be held responsible for same, as they did not erect them and they would, therefore, not trigger the indemnification clause in the McFAR-FUSION contract. Further, to the extent that plaintiff or McFAR is able to prove that any debris landed on plaintiff's property as a result of FUSION's work at the site, there exists a question of fact as to whether it reached plaintiff's property as a result of FUSION's negligence or the inadequacy of the protection installed by others. The mere fact that debris may have reached plaintiff's property does not prove FUSION acted negligently. The motion must therefore be denied absent such proof.

10. Despite the Affidavit annexed to McFAR's Motion, in the name of Mr. Farbstein, McFAR produced its' general manager, Robert Stern, for a deposition herein on June 19, 2012. Unlike Mr. Farbstein, Mr. Stern was present on the project in question.

11. As to any negligence on the part of FUSION, Mr. Stern testified that the only debris he ever saw on the plaintiff's roof at 266 Park was a little dirt (Page 52/Line 6), that there was no damage to the mansard roof (Page 52/Line 16) and that he never received any complaints about the mansard skylight (Page 52/Line 22). He never saw any FUSION employees on the roof at plaintiff's property (Page 53/Line 20). He further confirmed that the stairway which leads to the sidewalk bridge, which FUSION did not install, was affixed directly to the plaintiff's property (Page 53/Line 16). Mr. Stern even confirmed that he himself had walked on plaintiff's roof in the past at the beginning of the project with the bridge people, relative to where protection would be put for plaintiff's roof (Page 56/Line 8-24). (Annexed hereto as Exhibit "A" is the examination before trial transcript of McFAR witness, Robert Stern)

12. The testimony of Mr. Stern, falls far short of showing any evidence of negligence on the part of FUSION which would trigger the indemnification clause and, in fact, raises a question of fact as to whether he himself caused damage to plaintiff's roof when he walked on same.

13. Counsel for McFAR asserts, as does Mr. Farbstein in his Affidavit, that McFAR exercised no supervisory control over FUSION on this job. It should be noted that the contract between McFAR and the owner 270 WEST END Tenant's Corp, at Item 15 of the Rider to same, provides that McFAR shall "at its own cost and expense shall exercise every possible precaution and means to avoid accidents or injury to persons or property and shall adopt and carry out any reasonable suggestion of Owner in an effort to ensure safety". (Annexed hereto as Exhibit "B" is a copy of the prime contract between McFAR and the owner.)

14. To the extent that counsel for McFAR and Mr. Farbstein are correct and McFar exercised no control over the jobsite and, therefore, the protection of persons and property, there is a question of fact as to whether they have breached the prime contract. Such a breach would constitute McFAR's own negligent acts which would not be covered by the indemnity language of the subcontract, in either failing to install adequate protection or properly supervise the work done by Fusion, in order to ensure that no damage occurred. Accordingly the instant motion should be denied.

15. Further, as to the issue of supervisory control, Mr. Stern, the witness produced by McFAR testified that he was present on the job at least twice a week (Page 30/Line 11) and he was present, to make sure that they (FUSION) were following the details and check if there were any problems(Page 30/Line 15). The obvious implication of this statement is that if FUSION personnel were not following the work as detailed, he would correct such. It is your affirmant's position that this is supervisory control, sufficient to create a question of fact to deny the motion. The witness even testified that when he was not present on the jobsite, FUSION would report the job progress to him on occasion (Page 93/Line 4). Even when he did not receive reports, Mr. Stern claimed to be aware of what was happening on the job because the scope of work for the following day would be discussed with him. (Page 93/Line 21). Your affirmant believes that such constitutes supervisory control or at the very least, creates a question of fact as to whether McFAR had same.

16. The essence of supervisory control is the ability to put a stop to practices and or procedures not in keeping with the contract requirements. It is clear from Mr. Stern's testimony that McFAR had such ability, whether it exercised same or not.

17. At an examination before trial herein, an ex-employee of FUSION, admitted to striking a gutter on the plaintiff's property with a ladder and damaging same. The testimony of MR. Stern in connection with same belies counsel's claim that McFAR exercised no supervisory control on this job. Mr. Stern testified as follows with regard to this incident:

Stern deposition at Page 45/ Line 6 and following:

Q. Now does Exhibit "H" show damage to the gutter?
A. Yes.

Q. Did you actually at some point observe that damage?
A. What do you mean?

Q. Well, I know you took the picture. Did you go down onto the roof and look at the gutter?
A. No.

Q. Did you take this picture from the scaffold?
A. I took it from the roof.

Q. What is the difference between and B that you said that this was the repaired section of the gutter?
A. H was showing a little bit of the damage here (indicating).

Continuing at Page 46/ Line 2:

Q. Where it's bent?
A. Correct, and this is where it's straightened out, repaired (indicating).

Q. Do you know who straightened the gutter out?
A. We did.

Q. How did you go about doing that?
A. When we were before we took the scaffold, the hanging scaffold, down, we just used a crimp like a pliers but it's flat and we straightened it. It's flat. It's like pliers, but it's flat on the front. It's called a crimp (indicating).

Continuing at Page 47/Line 11:

Q. Before we get to the skylight, I'm talking about in the area of the gutter now. As far as you're aware, is it just bent?
A. Correct.

Q. It wasn't pulled lose from the building?
A. No.

Q. Was there any damage to the area of the roof at or about the area of the gutter?
A. No.

Q. Was there any damage under the gutter to the brick that you're aware of?
A. Not that I'm aware of.

Continuing at Page 89/Line 3:

Q. Who gave you permission to fix the gutter on my client's property?
A. Nobody, I recall.

Q. So you did it without permission?
A. Yes, it was the last day that we were able to get there.

Q. What day was that?
A. The day, whatever day we were taking down the scaffold in that section that we could reach over and do it.

Q. How long did it take you?
A. How long did it take, this repair take? Something like that anywhere from –

Q. No, how long did this take, this repair take?
A. I don't know.

Q. Were you present?
A. No, I wasn't.

Q. Who did you instruct to do that repair?
A. Stacie.

18.    The above passages clearly illustrate that the role of movant, McFAR was anything but passive on this jobsite. After being advised of some degree of damage caused to plaintiff's property, by its' subcontractor, according to the witness produced by McFAR, he personally directed Fusion to make repairs to plaintiff's premises without obtaining plaintiff's permission to do so. From his description of the damage, in and around the area of the gutter, it is clear that McFAR inspected the damage and the resulting repair and went so far as to photograph same.

While your affirmant certainly contests plaintiff's allegations as to the damages caused by this incident, it is clear that the movant McFAR directed and inspected the repair. Therefore, if plaintiff were proven correct and the damages exceed the simple bending of the gutter in question, McFAR could be held liable in their own right for having failed to properly inspect the attempted repair. It should further be noted that McFAR is seeking to have this Court rule that it is entitled to indemnity from FUSION for damages which its' own witness has testified did not exist surrounding the gutter.

19.  Your affirmant verily believes that there are questions of fact herein as to whether McFAR had and or exercised supervisory control over the jobsite in question which preclude the granting of Summary Judgment to McFAR on its indemnification claim against FUSION. It is further, your affirmant's belief that there exist questions of fact as to McFAR's own negligence herein which preclude granting Summary Judgment herein.

WHEREFORE, the third party defendant FUSION RESTORATION INC. hereby respectfully requests that this Court deny the Summary Judgment Motion of third party plaintiff, McFAR CONTRACTORS INC in its entirety and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 14, 2013

_____
James Feehan, Esq.
EPSTEIN, GIALLEONARDO,
HARMS & McDONALD
Attorneys for Second Third-Party Defendant
FUSION RESTORATION, INC.
One Whitehall Street, 13th Floor
New York, New York 10004-2109
(212) 248-9100
Matter No. 12-013067